---

### In re O'GARA.

(District Court, D. Oregon. November 20, 1899.)

#### No. 22.

BANKRUPTCY—GROUNDS FOR REFUSING DISCHARGE—CONCEALMENT OF ASSETS.
Where a merchant, finding himself insolvent, proceeded to hold out the money received from cash sales and from collections, until his business was closed by the levy of an attachment a few weeks later, and he was thereafter adjudged bankrupt, and it appeared that the money so accumulated by him amounted to a considerable sum, that it was not in his hands at the time of filing the petition in bankruptcy, that he gave no satisfactory account of it, and there was no evidence to show what had become of it, *held* to be sufficient ground for refusing to discharge him, especially with evidence of attempts to prefer certain creditors and to transfer his property to others.

In Bankruptcy. On bankrupt's application for discharge, and opposition thereto by creditors.

A. D. Stillman, for bankrupt.

J. N. Teal, for opposing creditors.

BELLINGER, District Judge. Upon this application reference was made to the referee in bankruptcy for Umatilla county, who finds and reports:

That the bankrupt commenced business by purchasing the stock of goods then contained in the White House grocery store, on Main street, in the city of Pendleton, about the 1st day of December, 1896, from his present wife, who was then Miss G. E. Stubenbordt, for the sum of $2,200 cash. That he has continuously conducted said business from that time up to the 28th day of November, 1898, when he was closed by attachment at the suit of Levy & Spiegel, creditors of said bankrupt. That, at the time of the levying of said attachment, the assets of said bankrupt consisted of the following items, viz.:

Stock of goods in store, about............................... $ 3,500 00
Fixtures ......................................................... 1,300 00
Book accounts, face value..................................... 5,234 00

Making a total of assets, nominal value................ $10,034 00

That no deduction has been made for shortage or bad or uncollectible accounts. That at the time of said attachment the bankrupt's indebtedness amounted, in round numbers, to the sum of about $11,500. That the bankrupt conducted his business fairly and honestly, but in a very crude and unskillful manner, up to about the 1st day of October, 1898. That at no time was he able to ascertain from his books how his business stood, except by "estimating"; but such manner of bookkeeping was not indulged in with intention to defraud, but owing to lax business ideas of the bankrupt. That on or about the 1st day of November, 1898, the bankrupt found that he was unable to meet his obligations, and proceeded to hold out the money coming in from his cash sales, and most of the money coming in from his cash collections, and to pay back to all persons who had intrusted him money that they had deposited with him, and other small local cash claims against him, amounting, for the two months of October and November, to about $1,505; and the balance of the money taken by him during the month of November, less cash accounted for on his books, amounting, as near as can be ascertained, to the sum of $2,614.46, he has failed to satisfactorily account for. That said money was not in the hands of the bankrupt at the time of filing his petition in insolvency, and its present whereabouts the evidence does not disclose. That the bankrupt made false statement of accounts in this proceeding at the time of the filing of his petition, in not accounting for the money mentioned in last above finding, but not knowingly false, as he believed at that time that it would not be necessary for him to include said accounts, but what his true motive was the testimony does not disclose. That the bankrupt, while insolvent, transferred a portion of his property to Mrs. May O'Gara, G. Thurber, B. E. Kennedy, C. Downey, and money to others unknown, and book accounts to Allen & Lewis, which they refused to receive, with intent to prefer such creditors over his other creditors.

These findings of the referee are supported by the evidence. The testimony of the bankrupt and his wife is so vague and uncertain, and altogether unsatisfactory, that it necessarily gives rise to an unfavorable impression as to the good faith of the bankrupt in the conduct of his business between about the 1st day of September and the date of the attachment mentioned in the findings. On the first of these dates he had on hand, according to a statement made by him to his principal creditors, Allen & Lewis, merchandise amounting to $3,675. He has bought since that time merchandise of the value of $9,645. His liabilities on the 1st of September, according to his own showing made to his creditors as aforesaid, amounted to $4,493. On the date of the attachment, November 28th, this indebtedness had increased to $11,500. The statement of assets and liabilities on September 1st purported to be a complete statement, which he declared to be positively correct in every detail. When attached he had merchandise on hand to the amount of about $3,500, being not far from the amount on hand on September 1st. There is nothing to show

what the outstanding book accounts were on September 1st, but on April 25th they were of the face value, in round numbers, of $2,500. At the time of the attachment the book accounts were of the face value of $5,234. Assuming that the book accounts on September 1st were not more than what they were in April, these accounts had increased, in round numbers, $2,700; which helps to account for the difference between the indebtedness on September 1st and November 28th, the date of the attachment, during which time, as already stated, this indebtedness had increased, in round numbers, $7,000. But there still remains unaccounted for property and assets to a large amount. This discrepancy cannot be explained upon the theory of careless bookkeeping or other loose methods in the conduct of the business. The time is too short, and the amount that has disappeared too large, to admit of any other explanation than a purpose on the part of O'Gara to secrete or cover up a large amount of his assets. There is no escape from this conclusion. If the bankrupt could not show, he ought at least to have been able to explain, upon some reasonable hypothesis, what had become of all these assets. He should have offered some tenable theory, at least, to explain why, with a large purchase of goods, amounting to nearly $10,000, after he had made his statement to Allen & Lewis, there is practically nothing left with which to meet his largely-increased indebtedness. The amount of his collections and deposits, and the daily cash receipts, as nearly as may be ascertained, as testified to by himself and his clerk, are further confirmation of the unfavorable conclusions which these figures create. The findings of the referee are clearly within the facts as shown by the testimony. My own opinion is that the case is more unfavorable than the findings of the referee show it to be. In such a case there can be no discharge of the bankrupt from his liabilities, and such discharge will be denied.